1  JENNIFER LLOYD KELLY (CSB No. 193416)
   jkelly@fenwick.com
2  LIWEN MAH (CSB No. 239033)
   lmah@fenwick.com
3  FENWICK & WEST LLP
   555 California Street, 12th Floor
4  San Francisco, CA  94104
   Telephone:    415.875.2300
5  Facsimile:    415.281.1350

6  Attorneys for
   KING.COM LIMITED, a Malta Corporation
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Ex Parte Application of<br><br>KING.COM LIMITED, a Malta Corporation,<br><br>Applicant. | Case No.:<br><br>**EX PARTE APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 GRANTING LEAVE TO OBTAIN DISCOVERY FOR USE IN FOREIGN PROCEEDINGS AND SUPPORTING MEMORANDUM** |

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782

Pursuant to 28 U.S.C. § 1782, King.com Limited ("King") applies to this Court *ex parte*[1] for an order granting King leave to obtain targeted discovery from Storm8 Studios LLC and Storm8 LLC (collectively "Storm8") and TeamLava, LLC ("TeamLava") for use in an ongoing trademark infringement proceeding that King brought against TeamLava and Storm8 in Malta. TeamLava and Storm8, which are two faces of the same entity, reside in the Northern District of California. This application is supported by the memorandum of points and authorities below and the Declaration of Michael Hawkins ("Hawkins Decl."). To show the tailored scope of the discovery King seeks, King has attached to this application as Appendix A the proposed subpoenas to be served on TeamLava and Storm8.

## INTRODUCTION

King seeks a narrow set of discovery from TeamLava and Storm8 for use in a trademark infringement proceeding against them in Malta. King develops and distributes popular online and mobile games, including the hugely popular *Candy Crush Saga*, *Candy Crush Soda Saga* and *Candy Crush Jelly Saga*. Knowing the strength of King's *Candy Crush* franchise of games and wanting to benefit from the power of those brands in the marketplace, when King's *Candy Crush Saga* was the number one free-to-download game in the world, TeamLava created similar games that unlawfully use King's marks related to its *Candy Crush* franchise of games. That unlawful use forced King to sue TeamLava and Storm8. Now, to ensure that TeamLava and Storm8 produce evidence that is highly relevant to proving their unjust benefit from unlawfully trading off King's marks, discovery here in the district where TeamLava and Storm8 reside is crucial. As

---

[1] Courts in this district routinely accept *ex parte* filing of Section 1782 applications for discovery. *See, e.g.*, *In re Roebers*, No. 12-80145, 2012 WL 2862122, at *2 (N.D. Cal July 11, 2012) ("An *ex parte* application is an acceptable method for seeking discovery pursuant to § 1782."); *In re Ex Parte Application of Apple Inc.*, No. 12-80013, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) ("Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege."); *In re Republic of Ecuador*, No. 10-80225, 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010) ("[I]t is common for the process of presenting the request to a court and to obtain the order authorizing discovery to be conducted *ex parte*. Such *ex parte* applications are typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it.") (internal quotations and citations omitted).

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782                     1

the proposed discovery requests (Appendix A; *see also* Hawkins Decl., Ex. A) show, King primarily seeks information relating to TeamLava's and Storm8's motivation and decision to use King's marks for their own games, as well as the extent to which TeamLava and Storm8 profited from that unauthorized use.

## I.  BACKGROUND

### A.  The Parties

In the civil proceeding in Malta, King seeks to stop TeamLava and Storm8 from using its trademarks to confuse consumers and unlawfully exploit the international popularity of King's games. Hawkins Decl. ¶ 13.

King is a company located in Malta. *Id.* ¶ 3. King develops and commercializes online and downloadable games, including a series of famous *Candy Crush* games. *Id.* ¶ 4. Among those games is King's *Candy Crush Saga*, which is hugely popular around the world on Facebook, iTunes, and other platforms. *Id*. King registered five separate trademarks related to *Candy Crush Saga* between March 12, 2012 and February 8, 2013 in the European Union: Nos. 011106713 and 010718542 for the word mark "Candy Crush" and related logo, Nos. 011560604 and 011560448 for the word mark "Candy Crush Saga" and related logo, and No. 011538147 for the word mark "Candy." *Id.* ¶ 5.

TeamLava, LLC, is a California limited liability company, with its principal place of business in this district at 1000 Bridge Parkway, Redwood City, California. *Id.* ¶ 6. Despite the different names, TeamLava is synonymous with Storm8 Studios LLC and Storm8 LLC. All are limited liability companies at the same Redwood City address.[2] *Id.* ¶¶ 6-7.  TeamLava and Storm8 also share the same internet domains: the web address www.teamlava.com automatically redirects to the Storm8 domain name www.storm8.com. *Id.* ¶ 7.  On TeamLava's blog (blog.teamlava.com), the Storm8 logo appears on a March 3, 2015 entry above the caption, "New name, same great games," followed by a paragraph that reads, "The new identity and name unites

---

[2] TeamLava and Storm8 LLC are California limited liability companies, while Storm8 Studios LLC is a Delaware limited liability company, but all have their office at the same Redwood City, California address. Hawkins Decl. ¶ 6 & Ex. A.

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782                    2

all of our game brands under the Storm8 umbrella . . . . Starting today, you will see some of your favorite TeamLava games under the new Storm8 Studios brand in the app stores." *Id.*, Ex. B. Storm8 was co-founded by Perry Tam (CEO of Storm8), William Siu (Chief Product Officer of Storm8), and Chak Ming Li (Chief Game Officer of Storm8). All three are part of both Storm8 and TeamLava in Redwood City, California. *Id.* ¶ 8, Ex. C. William Siu and Chak Ming Li have publicly stated that they are co-founders of "Storm8/TeamLava." *Id*.

### B. King, TeamLava, and Storm8 are all parties of the ongoing case in Malta

While King's *Candy Crush Saga* was establishing itself as the number one free-to-play online game worldwide, TeamLava and/or Storm8 launched their copycat game, *Candy Blast Mania*. *Id.* ¶ 9. Both the industry and consumers recognized that *Candy Blast Mania* was a "rip-off" of King's *Candy Crush Saga*. *Id*., Ex. E. By maximizing *Candy Blast Mania*'s similarities to King's *Candy Crush* games and timing its launch with the height of *Candy Crush Saga*'s popularity, TeamLava and Storm8 sought to free ride on the reputation and enormous success of *Candy Crush Saga.* But this free riding came at a steep cost to King by confusing consumers about the source of *Candy Blast Mania* and undermining the value of King's own games and trademarks.

King diligently sought to protect its business and trademarks against the copycat *Candy Blast Mania.* Beginning in November 2013, King sent several letters to TeamLava to demand that it stop infringing King's marks. *Id.* ¶ 10. TeamLava refused. *Id.* Every day that *Candy Blast Mania* remains on the market brings lots of revenue for TeamLava/Storm8. In light of the high stakes, TeamLava decided to involve the European Union's agency that administers trademarks, the Office for Harmonisation in the Internal Market ("OHIM"), by seeking a partial declaration of invalidity against one of the five King trademarks at issue. *Id.* ¶ 12 (No. 011538147). TeamLava took no action before the OHIM to challenge the other four King trademarks. *Id.*

TeamLava's recalcitrance forced King to sue TeamLava and Storm8 Studios LLC in May 2015 for infringement of King's five trademarks (Nos. 011106713 and 010718542 for the word mark "Candy Crush" and related logo, Nos. 011560604 and 011560448 for the word mark "Candy Crush Saga" and related logo, and 011538147 for the word mark "Candy") before the

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782           3

First Hall Civil Court in Malta, Claim Nos. 438/2015 MCH and 439/2015 MCH (collectively "the Maltese Proceeding"). *Id.* ¶ 13.  TeamLava and Storm8 have appeared in the Maltese Proceeding. *Id.*

To stave off judgment, TeamLava and Storm8 requested that the Civil Court in Malta stay the Maltese Proceeding until the OHIM adjudicates the invalidity of the sole King trademark they have challenged. *Id.* ¶ 14.  As described below, several of King's claims in the Maltese Proceeding do not concern the mark that OHIM is reviewing. *Id.* However, the applicable procedural standard, article 104 of European Union Regulation 207/2009, compelled the Civil Court in Malta to grant a temporary stay where "an application . . . for a declaration of invalidity has already been filed at [OHIM]." *Id.*  The Maltese Court did not base its decision to stay the case on the merits of the infringement claims, and the court did not express any view on King's ultimate likelihood of success. *Id.* ¶ 14.

Thus, regardless of the outcome of OHIM's review, the Maltese Proceeding will necessarily resume because King's claims against TeamLava and Storm8 also concern four other King trademarks that are entirely unrelated to the OHIM action. *Id.* ¶ 15. King has asserted claims that do not involve the single "Candy" mark that OHIM is reviewing. For example, King claims that TeamLava and Storm8 have diluted and taken unfair advantage of King's "Candy Crush" mark through their use of the "Candy Blast" name. In addition, King separately claims that TeamLava's and Storm8's "Candy Blast" name is confusingly similar to King's "Candy Crush" marks, which are highly distinctive because of King's extensive use of them.  Because the Maltese Proceeding eventually will resume, King needs discovery regarding how and why TeamLava and Storm8 used the names at issue and the benefit they have received from that use. *Id.* ¶ 16.

Conducting discovery now is critical to preserve evidence that may not be available by the time the stay of the Maltese Proceedings is lifted. *Id*. Trademark validity challenges such as TeamLava's can last for more than a decade. *Id*. In addition to OHIM's own appellate level, where the proceedings are now pending following TeamLava's challenge being entirely rejected at first instance, there are two further instances of appeal, to the General Court of the European

Union and the Court of Justice of the European Union. *Id*. The action may get remanded from those Courts to OHIM and then go up again on appeal. *Id*. Accordingly, by the time the Maltese Proceeding resumes, key witnesses may no longer be at TeamLava or Storm8, and important documents may become unavailable. There is no inherent obligation under Maltese law to preserve evidence as laws in the United States require. *Id*. Moreover, in light of TeamLava's founders having a history of changing corporate forms, King faces a risk that TeamLava and Storm8 will not still exist as entities from which King can obtain discovery after the end of the stay. *Id*. In all events, all of the discovery that King obtains during the stay will be of use to the Maltese Proceeding once the stay is lifted.

King seeks to depose only the three co-founders of Storm8, the company itself, and TeamLava. *Id.* King also seeks a small, discrete set of documents from TeamLava and Storm8 for those depositions. *Id.* ¶ 18, Ex. G; *see also* Appendix A.

## II.     LEGAL STANDARD

The primary purpose of 28 U.S.C. § 1782 is to provide assistance from federal courts in the United States in allowing discovery for use in a proceeding in a foreign or international tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). A district court may order a person to produce discovery if an applicant satisfies three requirements: (1) the person from whom the applicant seeks discovery resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a "foreign or international tribunal," and (3) the application is made by the foreign or international tribunal or "any interested person." 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 246.

Congress gave the federal district courts discretion to determine whether, and to what extent, to honor a request for assistance under Section 1782. *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002). Courts must exercise their discretion under Section 1782 in light of the twin aims of the statute: (1) providing efficient means of assistance in our federal courts to participants in international litigation, and (2) setting an example to encourage foreign countries to provide similar means of assistance to courts in the United States. *Intel*, 542 U.S. at 252. In addition, the Supreme Court has identified several non-

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782                    5

exclusive factors that a court should consider in its exercise of discretion on a Section 1782 request:

> (1) Whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court jurisdictional assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign-proof gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests.

*Intel*, 542 U.S. at 264.

Courts in this district regularly grant Section 1782 discovery to applicants who meet the three statutory requirements. *See, e.g.*, *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (affirming Judge Donato's grant of Section 1782 discovery); *In re Optus Admin. Pty Ltd.,* No. 16-80013, 2016 U.S. Dist. LEXIS 22734 (N.D. Cal. Feb. 24, 2016) (Lloyd, J.); *In re Int'l Judicial Assistance*, No. 15-80171, 2015 U.S. Dist. LEXIS 81550 (N.D. Cal. June 22, 2015) (James, J.); *In re Action & Protection Found.*, No. 14- 80076, 2015 U.S. Dist. LEXIS 54938 (N.D. Cal. Apr. 27, 2015) (Beeler, J.); *In re Global Energy Horizons Corp.*, No. 15- 80078, 2015 U.S. Dist. LEXIS 37138 (N.D. Cal. Mar. 24, 2015) (Grewal, J.); *In re Request for Int'l Judicial Assistance*, No. 15-80069, 2015 U.S. Dist. LEXIS 29962 (N.D. Cal. Mar. 11, 2015) (Beeler, J.); *In re Google Inc.*, No. 14-80333, 2014 U.S. Dist. LEXIS 173085 (N.D. Cal. Dec. 15, 2014) (Ryu, J.); *In re Ryanair Ltd.*, No. 14-80270, 2014 U.S. Dist. LEXIS 154972 (N.D. Cal. Oct. 31, 2014) (Grewal, J.); *Integrity Comm'n of Trinidad & Tobago v. Google Inc.*, No. 14- 80229, 2014 U.S. Dist. LEXIS 113795 (N.D. Cal. Aug. 14, 2014) (Orrick, J.); *In re Bayer Healthcare LLC*, No. 14-80138, 2014 U.S. Dist. LEXIS 100701 (N.D. Cal. May 14, 2014) (Alsup, J.); *In re Int'l Judicial Assistance from the First Circuit Court of Los Santos*, No. 13-80173, 2013 U.S. Dist. LEXIS 125612 (N.D. Cal. Sept. 3, 2013) (Tigar, J.); *In re Mak*, No. 12-80118, 2012 U.S. Dist. LEXIS 75844 (N.D. Cal. May 31, 2012) (Illston, J.); *In re Gianasso*, No. 12-80029, 2012 U.S. Dist. LEXIS 25763 (N.D. Cal. Feb. 28, 2012) (Illston, J.); *In re Republic of Ecuador*, No. 11-80171, 2011 WL 4434816 (N.D. Cal. Sept. 23, 2011) (Breyer, J.);

*In re Republic of Ecuador*, No. 10–80225, 2010 WL 3702427 (N.D. Cal. Sept 15, 2010) (Chen, J.).

As discussed below, King easily satisfies all three of Section 1782's statutory requirements, and the discretionary factors strongly favor granting King's application to ensure that King is able to preserve and use evidence that is highly relevant to its claims in the Maltese Proceeding.

### III. ARGUMENT

#### A. KING MEETS ALL THREE STATUTORY REQUIREMENTS OF SECTION 1782.

##### 1. Each of the Persons from Whom King Seeks Discovery Resides or Is Found in the Northern District of California.

King's application meets the first statutory requirement of Section 1782 because each company and individual from whom King seeks discovery resides or is found within this district. A company resides and is found, at a minimum, where it has an office and does business. *Consorcio Ecuatoriano v. JAS Forwarding (USA)*, 685 F. 3d 987, 993 (11th Cir. 2012); *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d 1296, 1303 (S.D. Fla. 2012); *see also In re Canadian Private Copying Collective*, 2011 U.S. Dist. LEXIS 47008 (D. Minn. Apr. 14, 2011) (finding a Minnesota LLC to be "found" in the District of Minnesota). It is also found where it has "systematic and continuous local activities." *In re Godfrey*, 526 F. Supp. 2d 417, 422 (S.D.N.Y. 2007). An individual is "found" within any district where he or she is employed. *See*, *e.g.*, *In re Republic of Ecuador*, No. 11-00052, 2011 WL 4089189, at *2 (E.D. Cal. Sept. 13, 2011).

King seeks discovery from TeamLava and Storm8, both of which maintain the same principal place of business in this district at 1000 Bridge Parkway, Redwood City, California. Hawkins Decl. ¶ 6. They list no other addresses elsewhere. *Id.* King also seeks discovery from Storm8's three co-founders whom Storm8 currently employs as CEO (Perry Tam), Chief Product Officer (William Siu), and Chief Game Officer (Chak Ming Li) in Redwood City, California. *Id.* ¶ 8. All persons from whom King seeks discovery thus "reside" or are "found" within Redwood City in this district, meeting Section 1782's first requirement.

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782              7

### 2. The Discovery That King Seeks Is for Use in an Ongoing Proceeding before a Foreign Tribunal in Malta.

Section 1782 requires that the requested discovery is for use in a proceeding before a foreign tribunal. The Supreme Court held that Section 1782 allows discovery even when the possibility of the proceeding is merely within "reasonable contemplation." *Intel*, 542 U.S. at 259. Thus, this requirement is also easily met, since King seeks to use the discovery in the Maltese Proceeding, which is an actual, not merely contemplated, proceeding in a foreign tribunal. Despite the temporary stay, the proceeding will resume because as explained above, the OHIM review of a single trademark will not resolve most of King's claims, which involve four other trademarks not even at issue before the OHIM. Accordingly, King has satisfied Section 1782's second requirement.

### 3. As a Party in the Maltese Proceeding, King Is an Interested Person.

A litigant in a foreign action qualifies as an "interested person" under Section 1782. *Id.* at 256. Because King is a party in the Maltese Proceeding, King is an interested person under Section 1782. Accordingly, King has satisfied Section 1782's third requirement.

### B. DISCRETIONARY FACTORS ALSO STRONGLY FAVOR GRANTING KING'S SECTION 1782 APPLICATION.

The discretionary factors identified by the Supreme Court also weigh heavily in favor of the Court granting King's request for discovery, especially in light of Section 1782's twin aims of assisting participants in international litigation and setting an example to encourage foreign countries to provide similar means of assistance to courts in the United States.

### 1. Without this Court's Assistance, the Requested Discovery is Unavailable to the Foreign Tribunal.

TeamLava and Storm8 are not challenging the jurisdiction of the Maltese Court over them, but the depositions, including testimony about related documents, that King seeks are outside the reach of the Maltese Court. *Id.* ¶ 16. The depositions will lead to highly relevant evidence that will be useful in the Maltese Proceeding, but the ability to take these depositions does not exist under Maltese civil procedure. *Id.* ¶ 16. The key individuals whom King seeks to depose (Perry Tam, William Siu, and Chak Ming Li) reside in this district, where the Maltese

Court lacks personal jurisdiction to compel their testimony, so allowing King to take discovery here in this district is the only way to make that discovery available in the Maltese Proceeding. *Id.* ¶ 16. Moreover, TeamLava has refused to cooperate in discovery with King in Malta. *Id*. In the Maltese Proceeding, King filed an application for provisional and protective measures as to evidence from TeamLava and Storm8. *Id*. TeamLava and Storm8 have vigorously rejected such application. *Id*. King has no way to compel TeamLava and Storm8 to participate in depositions in Malta even though they are parties in the Maltese Proceeding. *Id*. Without this Court's assistance, critical discovery from TeamLava and Storm8 would remain unavailable to the Maltese Proceeding.

Because the stay of the Maltese Proceeding may last years, King must immediately conduct discovery to gather evidence while it is still available. The gaming industry is fast moving, with the average lifespan of a game being only one or two years. *Id.* ¶ 16. Given the rapid change in the gaming industry, the risk of loss of evidence is unacceptably high unless King can secure witness testimony before witnesses' memories fade or before witnesses leave the company. Moreover, the risk of spoliation of evidence through the loss, deletion, or destruction of relevant documents is high unless King conducts discovery now. Because so many records in the video game industry are solely electronic (*e.g.*, descriptions and comments in the iTunes or Google Play stores or in social media postings) instead of on paper, they are particularly susceptible to being deleted or irrevocably altered.

Accordingly, this factor weighs heavily in King's favor.

### 2. The Maltese Court Would Be Receptive to Discovery Under § 1782.

When evaluating whether foreign tribunals would accept U.S. assistance, courts look for "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Siemens AG v. Western Digital Corp.*, 2013 U.S. Dist. LEXIS 159266 (C.D. Cal. Nov. 4, 2013) (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)). There is no authoritative proof that Malta would reject evidence obtained through Section 1782. To the contrary, Malta is a member state of UNCITRAL (United Nations Commission on International Trade Law), and UNCITRAL has authorized Section 1782 discovery in

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782                9

international arbitration proceedings. Hawkins Decl. ¶ 17.  Absent authoritative proof that a foreign tribunal would reject evidence, a district court's ruling should be informed by Section 1782's overarching interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *Euromepa*, 51 F.3d at 1100.

Accordingly, this factor weighs heavily in King's favor.

### 3. No Foreign Discovery Restrictions Bar King's Requested Discovery.

As shown in Exhibit G to the Hawkins Declaration, King seeks discovery under Section 1782 in the form of depositions and documents for use in those depositions.  This type of discovery is permitted even if discovery in domestic litigation has no analogue in the foreign proceeding. *See Intel*, 542 U.S. at 247, 261-63.  Indeed, the Supreme Court consistently has held that Section 1782 does not contain a "foreign-discoverability requirement"—that is, there is no requirement that the information sought be discoverable under the law governing the foreign proceeding. *Mak v. For the Issuance of Discovery in ex rel. Foreign Proceeding Pursuant to 28 U.S.C. 1782*, No. 12-80118, 2012 WL 2906761, at *1 (N.D. Cal. July 16, 2012) (allowing deposition because "it is irrelevant whether petitioner would be entitled to take the deposition under Hong Kong rules"); *Intel*, 542 U.S. at 260.  Relevant evidence is presumptively discoverable under Section 1782. *In re Application Pursuant to 28 U.S.C. 1782 for an Order Permitting Bayer AG*, 146 F.3d 188, 196 (3d Cir. 1998).  For discovery authorized under Section 1782, the federal discovery rules (including Federal Rules of Civil Procedure 26–36) contain the relevant practices and procedures for the taking of testimony and the production of documents. *In re Clerici*, 481 F.3d 1324, 1336 (11th Cir. 2007).  In other words, any discovery that is permitted under the Federal Rules is permitted under Section 1782.

King's application for Section 1782 assistance is not an attempt to circumvent foreign proof-gathering restrictions.  King is interested in obtaining discovery while the Maltese Proceeding is stayed because the testimony and related documents requested by King may not be available by the time the stay is lifted.  Further, there is no risk of impinging on the power of the Maltese Court because it can easily protect itself from the effects of any discovery order by the

district court that might inadvertently offend its foreign practice. *See Euromepa*, 51 F.3d at 1101 (noting that "[s]ince foreign courts could always rule upon the propriety of reliance on evidence obtained through the cooperation extended by American courts when it was presented to them, the drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on discoverability and admissibility under foreign law"). After all, a foreign tribunal's corrective response to a well-intentioned but unwelcome grant of discovery could bar the evidence gathered in the given case. *Id*. Because there are no known proof-gathering restrictions in Malta, and the Maltese Court ultimately can decide whether to bar evidence gathered under Section 1782, this factor weighs in King's favor.

          4.    <u>King's Requested Discovery Is Narrowly Tailored to Avoid Undue Burden.</u>

Requests under Section 1782 should be tailored to the litigation issues for which production is sought. At issue in the Maltese Proceeding is the infringement of five of King's trademarks—figurative and word marks related to "Candy Crush," "Candy Crush Saga," and "Candy"—by TeamLava and Storm8's uses related to "Candy Blast Mania," "Candy Blast," and "Candy."

King has no desire to engage in a fishing expedition; its interest is in targeted discovery seeking highly relevant evidence that is crucial for the Maltese Proceeding. As Exhibit G to the Declaration of Michael Hawkins shows, King seeks testimony about

- Formation, relationship, and ownership of TeamLava and Storm8, and any shifting of rights or business activities between them;
- Who owns, operates, and distributes *Candy Blast Mania*;
- Why TeamLava and Storm8 created and named *Candy Blast Mania*;
- The success of *Candy Blast Mania*, in terms of popularity, downloads, and revenue;
- TeamLava and Storm8's investment and expense in producing and promoting *Candy Blast Mania*;

EX PARTE APPLICATION FOR AN ORDER
PURSUANT TO 28 U.S.C.§1782         11

- TeamLava's and Storm8's analysis or research about King's *Candy Crush* game and intellectual property rights, including the trademarks at issue in the Maltese Proceeding.
- Confusion about *Candy Blast Mania*'s source or relationship to King and its games and marks.

For these topics, King seeks to depose only the most knowledgeable persons with this information: TeamLava, Storm8, and Storm8 co-founders Perry Tam, William Siu, and Chak Ming Li.  Because those depositions will involve overlapping subjects, and one or more of the co-founders is likely to be the corporate representative(s) for the Rule 30(b)(6) depositions, the depositions should not impose a significant burden on anyone's time.  For the depositions of TeamLava and Storm8, King also seeks a small set of related documents, as shown in Exhibit G.

The Court should thus find that King's requested discovery is not unduly intrusive or burdensome; in fact, requesting discovery in the Northern District of California is more convenient for all persons from whom King seeks documents or testimony because they all reside or are found in this district in Redwood City.

Because King's requested discovery is narrowly tailored, this factor weighs in King's favor.

## CONCLUSION

For all the foregoing reasons, King respectfully requests that this Court grant its application for an order to obtain discovery for use in the Maltese Proceeding.

Dated:   March 25, 2016                        FENWICK & WEST LLP

By: /s/ Liwen A. Mah
    Liwen A. Mah

Attorneys for
KING.COM LIMITED, a Malta Corporation