1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7 IN RE KING.COM LIMITED.

Case No.  16-mc-80070-JCS

8

9 **ORDER GRANTING RESPONDENTS' MOTION TO QUASH THE**

10 **SUBPOENAS GRANTED PURSUANT TO APPLICANT'S SECTION 1782 APPLICATION**

11 Re: Dkt. No. 8

12

13 **I.    INTRODUCTION**

Respondents filed a Motion to Quash subpoenas (the "Motion," dkt. no. 8) issued after the

14

Court granted King.com Limited's ("King's") ex parte application for discovery (the

15

"Application," dkt. no. 1).  King's Application was filed pursuant to 28 U.S.C. § 1782(a), which

16

permits a party engaged in foreign proceedings to seek discovery in the United States through

17

federal court.

18

In February 2015, King initiated proceedings in the Civil Court of Malta against

19

Respondents Storm8 Studios LLC and TeamLava LLC, claiming that their mobile gaming

20

application *Candy Blast Mania* infringed King's European trademarks pertaining to its games

21

*Candy Crush* and *Candy Crush Saga*.  In October 2015, the Maltese court stayed proceedings

22

while the European Union Intellectual Property Office reviews the validity of a trademark that

23

underlies King's infringement claims.

24

In the Application, King requested subpoenas to depose Storm8, TeamLava, and their three

25

managing executives, intending to use the evidence in the Maltese proceedings after the stay is

26

lifted.  Storm8 and TeamLava moved to quash the subpoenas.  On August 5, 2016, the Motion

27

28

came on for hearing.  The Court GRANTS the Motion.[1]

## II.    BACKGROUND

### A.    Facts Preceding the Application

King is a Maltese company that develops and commercializes online and downloadable games, including the well-known *Candy Crush* and *Candy Crush Saga* games.  Declaration of Michael Hawkins in Support of King's Ex Parte Application ("Hawkins Decl.," dkt. no. 2) ¶¶ 3–4, 9.  In March 2012 and February 2013, King filed five trademarks in the European Union relating to the *Candy Crush* franchise: (1) the name "Candy Crush"; (2) the corresponding logo for "Candy Crush"; (3) the name "Candy Crush Saga"; (4) the corresponding logo for "Candy Crush Saga"; and (5) the word "Candy."[2]  *Id.* ¶ 5.  King sent the first of several cease-and-desist letters to Respondents in November 2013 requesting changes to *Candy Blast Mania*.  *Id.* ¶ 10; Declaration of Mark William Owen in Support of Respondents' Motion to Quash ("Owen Decl.," dkt. no. 11) ¶ 4.

In August 2014, Respondents sought a partial declaration of invalidity for King's trademark for the word "Candy" at the European Union Intellectual Property Office (EUIPO).[3]  Hawkins Decl. ¶ 12; Owen Decl. ¶ 2.  The following month, King filed a formal cease-and-desist warning against Respondents in the First Hall of the Civil Court of Malta, alleging that they were infringing on King's intellectual property rights.  Declaration of Paul Micallef Grimaud in Support of Respondents' Motion to Quash ("Grimaud Decl.," dkt. no. 10) ¶ 2; Declaration of Luigi A. Sansone in Support of King's Opposition ("Sansone Decl.," dkt. no. 19) ¶ 15.  King asserts that Respondents refused to make changes to their game after the warning was filed, Sansone Decl. ¶ 15, although Respondents suggest that they were unaware of the warning until some months later, Grimaud Decl. ¶ 2.

In January 2015, Respondents filed an application to invalidate five of King's Registered

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
[2] Trademark numbers 011106713, 010718542, 011560604, 011560448, and 011538147.  Hawkins Decl. ¶ 5.
[3] When Respondents initiated the trademark invalidation proceedings, EUIPO was known as the Office for Harmonisation in the International Market.

United States District Court
Northern District of California

United States District Court
Northern District of California

Community Designs used in King's *Candy Crush* games.  Owen Decl. ¶ 3.

In February 2015, King filed a pan-European "Warrant of Prohibitory Injunction" in the Maltese court against Respondents.  Grimaud Decl. ¶ 3; Sansone Decl. ¶ 16.  The Maltese court provisionally granted a 45 day interim injunction.  Grimaud Decl. ¶ 3; Sansone Decl. ¶ 16.[4]  Respondents filed a reply brief that included a voluntary affidavit from Perry Tam, one of Respondents' three shared executives.  Grimaud Decl. ¶ 3; Sansone Decl. ¶ 17.

In March 2015, the Maltese court lifted the provisional injunction and denied King's request for a pan-European injunction.  Grimaud Decl. ¶ 3.

On May 13, 2015, King brought trademark infringement claims against Respondents in the Maltese court.  Hawkins Decl. ¶13; Grimaud Decl. ¶ 5.  King claimed that Respondents had violated its five trademarks for "Candy," "Candy Crush," and "Candy Crush Saga."  Hawkins Decl. ¶ 13; Grimaud Decl. ¶ 5.  Respondents subsequently appeared before the Maltese court, submitting to its jurisdiction and contesting King's claims.  Sansone Decl. ¶ 18.

In June 2015, Respondents requested that the Maltese court stay proceedings until EUIPO's review of King's trademark for "Candy" had become final.  Grimaud Decl. ¶ 6; Hawkins Decl. ¶14.  The Maltese court granted Respondents' stay request on October 5, 2015.  Grimaud Decl. ¶ 6; Sansone Decl. ¶ 19; Hawkins Decl. ¶ 14.  King immediately requested reconsideration of the Maltese court's stay order.  Grimaud Decl. ¶ 7.

On October 28, 2015, EUIPO rejected Respondents' trademark invalidation request.  Sansone Decl. ¶ 14; Ex. G.  Respondents appealed EUIPO's ruling, but King's registered trademark for "Candy" is presently valid in the European Union.  Sansone Decl. ¶ 14.

On December 9, 2015, the Maltese court denied King's request for reconsideration and confirmed that King's infringement proceedings against Respondents were stayed until EUIPO had completed all trademark invalidity proceedings, including appeals.  Grimaud Decl. ¶ 7.  King then requested that the Maltese court provide five provisional measures for the duration of the stay: (1) an interlocutory injunction throughout the European Union; (2) an order requiring

---

[4] According to King, Respondents circumvented the injunction during the 45 day period.  Sansone Decl. ¶ 16.

Respondents to deposit a €4 million guarantee with the Maltese court; (3) an order prohibiting Respondents from transferring *Candy Blast Mania* or its trademarks to another entity; (4) an order requiring Respondents to preserve all evidence pertaining to the trademarks, including bank and financial information; and (5) a written order published throughout the European Union that describes these provisional measures.  Grimaud Decl. ¶ 8; Sansone Decl. ¶ 24.

On February 8, 2016,[5] Respondents replied to King's request for provisional measures. Grimaud Decl. ¶ 9.  A few days later, King requested that the Maltese court order discovery.  *Id.* ¶ 10; Sansone Decl. ¶ 28.  King argued that immediate discovery was imperative to prevent prejudice because the stay was expected to last for a long period of time.  Grimaud Decl. ¶ 10; Sansone Decl. ¶ 28.  On February 22, King specifically asked the Maltese court to order Respondents to produce a certified copy of their audited accounts.  Grimaud Decl. ¶ 11.  On March 7, Respondents filed an opposition to King's discovery requests.  *Id.* ¶ 12.  On March 14, the Maltese court heard King's discovery request and ordered production of expert-legal opinions on disputed legal questions, but orally indicated that King's request for immediate discovery would be denied.  *Id.* ¶ 13.

### B.    The Application

On March 24, King filed its Application ex parte, requesting that the Court approve subpoenas for the depositions of Respondents and their three shared executives: Perry Tam, Chak Ming Li, and William Siu ("the executives").  Appl. at 7.  King explained that it was seeking evidence pertaining to the unauthorized use of King's trademarks by Respondents and the extent to which Respondents had profited therefrom.  *Id.* at 1–2.  After outlining some of the proceedings outlined above, King asserted that the stayed Maltese proceedings "will necessarily resume because King's claims against [Respondents] also concern four other King trademarks that are entirely unrelated to the [EUIPO] action."  *Id.* at 4.  King contended that, because Respondents' trademark validity challenge could "last more than a decade," permitting it to conduct discovery was critical to preserving evidence that may no longer be available when the Maltese court lifts its

---

[5] All further dates herein refer to the year 2016 unless otherwise indicated.

stay. *Id.* at 4–5.  King further contended that the need for immediate discovery was critical because Maltese law does not impose an obligation to preserve evidence and Respondents had a history of changing corporate forms. *Id.* at 5.  King also assured the Court that it "ha[d] no desire to engage in a fishing expedition" because its interest was seeking targeted, highly relevant evidence crucial to the Maltese proceeding. *Id.* at 11.  On April 5, the Court granted King's Application. *See* dkt. no. 3.

### C.   Events after the Court Granted the Application

On April 11, the Maltese court heard oral argument on King's request for provisional measures.  Grimaud Decl. ¶ 15.  King did not notify the Maltese court of its Application for discovery granted by this Court during that oral argument. *Id.*  The following day, King served the executives and Respondents with subpoenas for depositions and documents issued pursuant to King's Application.  Declaration of Thomas E. Gorman in Support of Respondents' Motion to Quash, dkt. no. 9, Exs. 6–10.  Respondents objected. *Id.*, Exs. 11–12.

On April 18, the Maltese court granted King's request for provisional measures in part, ordering that Respondents deposit a €1.5 million monetary guarantee and to preserve documentary evidence.  Grimaud Decl. ¶ 17.  The Maltese court denied King's requests for an interlocutory injunction, for an order prohibiting Respondents from transferring *Candy Blast Mania* or its trademarks, and that the Maltese court publish the order throughout the European Union. *Id.*

That same day, the Maltese court also delivered a separate order denying King's request for discovery, explaining that there was no basis for granting King's request at that stage of the stayed proceedings. *Id.* ¶ 18.  The Maltese court also suspended the submission of evidence for the duration of the stay. *Id.*

On May 2, Respondents notified the Maltese court that they had complied with its evidence preservation order and that they would continue to do so throughout the duration of the stay. *Id.* ¶ 19.  On May 26, the Maltese court confirmed that it had received this notice from Respondents. *Id.*

Likewise, Respondents deposited the monetary guarantees as ordered by the Maltese court. Sansone Decl. ¶ 26.

**D.     The Declaration of Luigi Sansone**

In Opposition to the Motion, King submitted the declaration of Luigi A. Sansone.  Several statements in that declaration are particularly relevant to the Court's analysis.  First, regarding the monetary guarantee deposited by Respondents, Sansone explained that the Maltese court "considers this amount as balanced and proportionate in the circumstances.  This guarantee, in [Sansone's] view substantial in nature, is proof alone that the Civil Court in Malta fully expects the Maltese Proceedings to resume after" EUIPO completes its review of King's "Candy" trademark.  *Id.* ¶ 23.

Second, Sansone addressed the deposition and documentary evidence that King requested in its Application.  Characterizing the documents sought as a "subset" of those requested in Malta, Sansone attests that King is specifically seeking revenue information pertaining to Respondents' products that "are not at issue" in the Maltese proceedings because such information may help King calculate damages and Respondents' undue profits.  *Id.* ¶ 30.  Sansone further attests that it is seeking other information relating to its intellectual property rights beyond the trademark claims pending in the Maltese proceedings because such information "may be of relevance to other judicial proceedings King may wish to initiate against TeamLava and/or Storm8."  *Id.* ¶ 30.

**E.     The Motion**

On May 26, Respondents filed the Motion, requesting that the Court quash the subpoenas issued pursuant to King's Application.  Respondents first contend that the Application must be quashed because it fails to meet the legal requirements of 28 U.S.C. § 1782, as defined by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).  Mot. at 13–16.  Second, Respondents contend that—regardless of the Application's legal insufficiency—the discretionary factors outlined in *Intel* weigh in favor of quashing the subpoenas.  *Id.* at 16–21.

Respondents' statutory contention focuses on the meanings of *proceeding* and *use* under § 1782(a).  *Id.* at 13–16.  Respondents assert that, while a proceeding before a foreign tribunal need not be pending or imminent, one must be "within reasonable contemplation."  *Id.* at 13–14.  Because the Maltese court has ordered an indefinite stay of proceedings—a stay which may last a decade—Respondents conclude that Maltese proceedings are not within reasonable contemplation

as § 1782 requires.  *Id.* at 13–14.  Respondents also argue that King cannot in fact *use* the discovery it has requested because the submission of evidence to the Maltese court has been suspended for the duration of the stay.  *Id.* at 15–16.

Turning to discretionary factors discussed in *Intel*, Respondents contend that the Court should grant the Motion regardless of whether the Application meets the legal requirements of § 1782 for three reasons.  *Id.* at 16–21.  First, Respondents argue that, as parties to the Maltese proceedings, they have submitted to the Maltese court's jurisdiction and will continue complying with its discovery orders.  *Id.* at 16–18.  Respondents assert that the Maltese court can request foreign depositions through letters rogatory—which King has not requested thus far—or testimony by affidavit.  *Id.* at 17.  Respondents further assert that King cannot demonstrate that Maltese discovery procedures are less comprehensive than those in the United States and, moreover, King is a sophisticated party that freely chose Malta as the forum for this litigation.  *Id.* at 17–18.

Second, Respondents argue that the Application is an attempt to circumvent the Maltese court's April 18 denial of King's request for discovery.  *Id.* at 18–19.  Respondents emphasize that the policy underlying § 1782 is helping foreign tribunals obtain relevant and useful information that those tribunals might otherwise be unable to obtain.  *Id.* at 18.  Respondents further contend that a district court must consider how an applicant seeking § 1782 discovery is faring in its attempts to procure the same information through the procedures available to it in the foreign proceedings.  *Id.* at 18.  Respondents point out that King filed its Application ten days after the Maltese court orally indicated that granting discovery would violate its stay order and, therefore, the Application constitutes a surreptitious attempt to bypass the Maltese court's discovery restrictions.  *Id.* at 19.  Respondents thereby infer that King is a frustrated litigant improperly attempting to divest a foreign tribunal of jurisdiction.  *Id.*

Third, Respondents argue that the subpoenas issued pursuant to the Application are an irreparably burdensome and invasive attempt to bog them down in litigation.  *Id.* at 19–21.  Respondents specifically contend that King has requested privileged information, which is expressly prohibited by § 1782.  *Id.* at 19–20.  Respondents also point out that King has requested

competitively sensitive information that is irrelevant to the Maltese litigation.[6]  *Id.* at 20.

Respondents further assert that the subpoenas ordering depositions of the executives are

particularly abusive.  *Id.* at 20.  Respondents likewise argue that King will request updated

responses from Respondents and the executives when the litigation resumes, which imposes a

burden of duplication that outweighs any benefit from obtaining discovery immediately.

*Id.* at 20–21.

Respondents conclude that King's failure to inform the Maltese court that King filed the

Application is indicative of an improper, "parallel discovery campaign" that undermines the

Maltese court's ruling and the underlying purpose of § 1782.  *Id.* at 21.

In its Opposition, King first contends that the Application is justified by King's need to

preserve evidence which could "grow stale or be lost over time" because Maltese procedure has a

best evidence rule.  King.com Limited's Opposition to Respondents' Motion to Quash

("Opposition," dkt. no. 17) at 1.  King further disputes Respondents' factual assertions, stating that

they have incorrectly claimed that the Maltese court has denied documentary discovery and

mischaracterized the documentary evidence King has requested as "remarkably similar" to that

allegedly undiscoverable evidence.  *Id.*

Addressing Respondents' statutory arguments, King contends that the Application meets

the requirements of § 1782 because the evidence requested therein will be used in an actual

proceeding before a foreign tribunal.  Specifically, King argues that it has met the requirements of

§ 1782 because the evidence requested "could eventually be used when the stay is lifted," which

King further asserts will inevitably result when Respondents' trademark appeal is resolved.  *Id.* at

11–15.  In support of this contention, King stresses the following points: (1) King must seek the

best evidence now or risk losing such evidence during later proceedings; (2) the inability of the

Maltese court to order depositions does not preclude King from seeking them through § 1782; and

(3) it is inappropriate for the Court to consider why and how the Maltese court may use deposition

---

[6] Specifically, Respondents explain that King has requested information regarding products, in-game features, revenues, time periods, geographic regions, and materials that exceed the scope of the Maltese litigation.  Mot. at 20.

United States District Court
Northern District of California

evidence.  *Id.*

Turning to discretionary factors discussed in *Intel*, King first contends that, in this district, the question is not whether Respondents are a party to the foreign litigation, but rather "whether the material sought is within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid." *Id.* at 15 n. 7.  King further argues that there is no "quasi-exhaustion requirement" of seeking and failing to obtain the discovery in the foreign proceedings.  *Id.* Asserting that Maltese procedure does not provide for the depositions it requested, King states that an application filed under section 1782 was its only means for preserving important evidence "[b]ecause the stay of the Maltese Proceeding may last years," but the life spans of mobile gaming applications are much shorter.  *Id.* at 16.  King further asserts that it was not required to pursue alternative avenues, including letters rogatory, before filing the Application and that permitting the depositions now would promote efficiency because the burden is the same now as will be later. *Id.* at 16–17.

Second, King contends that the Maltese court would be receptive to the discovery requested in the Application, arguing that Respondents have failed to provide affirmative proof that the Maltese court would reject the evidence.  *Id.* at 17.  King further argues that such evidence would meet the Maltese best evidence rule.  *Id.* at 18.

Third, King contends that the Maltese court has not precluded the discovery of the testimonial and documentary evidence it seeks from the depositions as it is not the same in kind or in quantity as the discovery requested by King in the Maltese proceedings.  *Id.* at 18–19. Emphasizing that the Maltese court had determined that it was not allowed or prepared to receive documentary evidence, King disputes Respondents' assertion that the Application constitutes an attempt to circumvent foreign proof-gathering restrictions.  *Id.* at 19.

Finally, King contends that it has made reasonable efforts to minimize the burden that this discovery would impose on the subpoenaed persons and entities, disputing Respondents' argument that the requested discovery constitutes an undue burden.  *Id.* at 19–20.  King further points out that the executives have knowledge and involvement in the underlying issues, pointing to Tam's voluntary affidavit as evidence, and arguing that a deposition of a corporate officer should be

United States District Court
Northern District of California

9

allowed if that officer has any first-hand knowledge of relevant facts.  *Id.* at 20–21.

In its Reply brief, Respondents critique the factual premises underlying King's Opposition, explaining that the validity of the key trademark—"Candy"—at issue in the Maltese litigation is being reviewed by EUIPO.  Respondents' Reply in Support of the Motion to Quash (dkt. no. 20) at 1.  According to Respondents, the decision there will determine the scope and value of the Maltese litigation.  *Id.*  Respondents also emphasize that the Maltese court barred all discovery for the duration of the stay order and King's asserted need to preserve evidence is belied by the Maltese court's rejection of that argument.  *Id.*  Respondents surmise that King improperly filed its Application as a result of the Maltese court's oral indication that obtaining discovery would be contrary to its stay order.  *Id.*

Respondents reiterate their contention that the Application does not pertain to evidence that can be used in a foreign proceeding as § 1782 requires.  *Id.* at 3–8.  Respondents argue that King has failed to establish that the evidence it seeks can be used in a merits-focused proceeding that will begin within a reasonable time for four reasons.  *Id.* at 3–5.  First, Respondents assert that the Maltese proceedings may be narrowed considerably if EUIPO invalidates King's trademark for "Candy."  *Id.* at 4.  Second, Respondents assert that the length of the stay renders proceedings on the merits too speculative and remote to be within reasonable contemplation.  *Id.* at 4.  Third, Respondents assert that King has failed to identify how they can employ the evidence requested in the Application to any advantage in the Maltese proceedings during the duration of the indefinite stay.  *Id.* at 5–8.  Finally, Respondents assert that King's reliance on Malta's best evidence rule is illogical and misleading and, in a footnote, Respondents suggest that, to the extent King has contended it was required to *seek* the best evidence, the Application has satisfied the obligation regardless of whether it is granted by the Court.  *Id.* at 7 n. 12.

Respondents also reiterate their contention that the Court should exercise its discretion and grant the Motion under factors discussed in *Intel*.  First, Respondents argue that the Court should consider comity and parity, the policy rationales that underlie § 1782.  *Id.* at 8–10.  Respondents argue that is unnecessary and improper to order discovery when, as now, the foreign tribunal has jurisdiction over the party from whom the discovery is sought and especially when, as now, the

United States District Court
Northern District of California

foreign tribunal has rejected requests for similar discovery. *Id.* at 8. Respondents likewise reassert that the Application is an improper attempt to avoid the Maltese court's ruling barring discovery during the stay and divest that court of jurisdiction while unfairly forcing them to litigate against King in two separate court systems. *Id.* at 10–12. Finally, Respondents reiterate that the subpoenas requested in the Application are irreparably burdensome and invasive, specifically pointing out that Declarant Sansone has effectively admitted that King harbors improper purposes for requesting the evidence. *Id.* at 12–14.

## III.   ANALYSIS

### A.   Legal Standard

"Under 28 U.S.C. § 1782, a district court may order a person residing or found within its district to produce documents or testimony for use in a foreign legal proceeding, unless the disclosure would violate a legal privilege." *In re Ex Parte Application of Apple Inc., Apple Retail Ger. GMBH, and Apple Sales Int'l*, Case No. 3:12–mc–80013–JW, 2012 WL 1570043, at *1 (N.D. Cal. May 2, 2012) (citing 28 U.S.C. § 1782(a); *Intel*, 542 U.S. at 246–47). "The statute may be invoked where: (1) the discovery sought is from a person residing in the district court to which the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is a foreign or international tribunal or an 'interested person.'" *Id.* (citing *In re Republic of Ecuador*, Case No. C–10–80225 MISC CRB (EMC), 2010 WL 3702427, at *2 (N.D. Cal. Sept. 15, 2010)).

The Supreme Court has explained that a district court retains wide discretion to grant or deny a § 1782 application and "determine what discovery, if any, should be permitted." *See id.* (citing *Intel*, 542 U.S. at 264; *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002)). "In exercising that discretion, the court should consider the following non-exhaustive factors: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the discovery request is an attempt to circumvent proof-gathering restrictions or other policies of a foreign country or the United States;

11

and (4) whether the discovery requested is unduly intrusive or burdensome." *Id.* (quoting *Intel*, 542 U.S. at 264–65) (internal quotation marks omitted).

Courts commonly grant ex parte applications filed pursuant to § 1782 as a party from whom discovery is sought will receive adequate notice and be able to timely move to quash the discovery. *See IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2015) (citing *In re Republic of Ecuador*, 2010 WL 3702427, at *2). As in other civil contexts, the movant bears the burden of persuading the Court to quash subpoenas issued pursuant to § 1782. *See id.* (citing *In re Ex Parte Application of Apple Inc.,* 2012 WL 1570043, at *1).

### B.    Discretionary Considerations Strongly Favor Granting the Motion

Respondents contend that the discretionary factors outlined in *Intel* weigh in favor of granting the Motion. *See* Mot. at 16–21. The Court agrees and addresses each factor in turn.

#### 1.    Respondents Are Participants in the Maltese Proceeding

In *Intel*, the Supreme Court explained, "When the person from whom discovery is sought is a participant in the foreign proceeding, the need for § 1782 aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence." *Intel*, 542 U.S. at 264. Here, Respondents are participants in the foreign proceedings, having voluntarily submitted themselves to the Maltese court's jurisdiction. The Maltese court can order Respondents to produce evidence, but has suspended the production of evidence for the duration of its stay. Furthermore, the Maltese court has ordered Respondents to preserve evidence, and Respondents have complied.

#### 2.    Because the Proceedings Have Been Stayed, the Maltese Court Is Presently Unreceptive to Discovery

King suggests that, absent authoritative proof the foreign tribunal would reject evidence obtained through its § 1782 application, the Court should find this factor favors denying the Motion. *See* Opp'n at 17–18. However, the Supreme Court did not describe this consideration with such severity. Rather, it explained that the Court "may take into account the nature of the foreign tribunal, *the character of the proceedings underway abroad*, and the receptivity of the

foreign government or court . . . to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264 (italics added).

Although the Maltese court may typically be receptive to § 1782 assistance, the proceedings in Malta pertaining to King's application have been stayed, i.e., they are not presently *underway*. For the duration of that stay, the Maltese court has suspended the submission of evidence. Although, in the future, when or if the stay is lifted, the situation may change, at the moment, the Maltese court will not receive any evidence that this Court might order produced.

### 3. Circumvention of the Maltese Court's Proof-Gathering Restrictions

*Intel* provides that a district court may consider whether a § 1782 request for discovery conceals an attempt to circumvent "foreign proof-gathering restrictions." *Intel*, 542 U.S. at 265. King contends that the Maltese court has not *precluded* it from seeking depositions and documents and emphasizes that the evidence it has requested is not the same discovery that the Maltese court suspended. Opp'n at 18–19. The Court concludes that, in light of all of the circumstances, it is fair to conclude that the Maltese court relieved the parties of the burden of discovery during the stay. Any order by this Court allowing discovery would not give proper consideration to the rulings of the Maltese forum.

First, the Maltese court stayed all proceedings in Malta. Sansone Decl. ¶ 19, Ex. C at 1. This was not a partial stay, or a stay with permission to conduct limited discovery. Second, the Maltese court subsequently denied King's application for an order requiring Respondents to produce documents related to the marks and all other relevant documents. *Id.* ¶ 28. Although King appears to be concerned that any order granting such discovery would have also required the Maltese court to receive the evidence during the stay, it cannot be denied that the Maltese court declined to order any discovery during the stay. Finally, the Maltese court issued a document preservation order, suggesting that it recognized that discovery of those documents would not take place now—but sometime later after the stay is lifted—and therefore sought to preserve the evidence for later discovery.

In light of these three rulings by the Maltese court, this Court concludes the instant application is an effort to circumvent the ruling of that forum. This conclusion is buttressed by the

13

fact that King has failed to bring the § 1782 application to the attention of the Maltese court—or to request that the Maltese court lift the stay to allow or issue a provisional remedy allowing use of foreign procedures. *Cf. In re Cathode Ray Tube (CRT) Antitrust Litigation*, MDL No. 1917, Case No. C–07–5944–SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013) (explaining that a court can consider its perception that an applicant has "side-stepped" unfavorable discovery rules).

### 4. The Requested Discovery Is Unduly Intrusive

In *Intel*, the Supreme Court stated that "unduly intrusive or burdensome requests may be rejected or trimmed." *Intel*, 542 U.S. at 265. The Supreme Court also discussed the use of § 1782 applications for "fishing expeditions," suggesting that district courts may prevent discovery of business secrets and confidential information. *Id.* at 266. The principle that purports to justify the § 1782 discovery during the Maltese stay is the desire to preserve evidence. King's justification is weak in light of several considerations. First, the Maltese court issued an order to Respondents, over whom it had jurisdiction, commanding them to preserve documents, including banking, commercial, and financial records, during the stay. Of course, the Maltese court did not order depositions, but documentary evidence will be preserved. Second, the face of the Application, and indeed King's Opposition, reflects the fact that King seeks evidence on matters other than those at issue in Malta,[7] which, in the words of King's Maltese counsel, "*may be of relevance to other judicial proceedings King may wish to initiate against*" Respondents. Sansone Decl. ¶ 30. The Court cannot imagine more obvious evidence that a party seeks an impermissible fishing expedition through a § 1782 application.

### 5. Conclusion re: Discretionary Factors

In light of the discretionary factors described above, the Court exercises its discretion to quash the subpoenas served pursuant to § 1782. In light of the stay and the forum court's rulings, the protections instituted by the foreign court, and the breadth of the subpoenas, the Motion to

---

[7] *See* Appl. at 11–12; Gorman Decl., Ex. 9, Topic 6 (seeking information about Respondents' analysis of, *inter alia*, King's intellectual property rights not at issue in the Maltese proceedings), Doc. Req. ¶¶ 2 (requesting documents on all deposition topics), 5 (seeking documents on Respondents' revenue for products not at issue in Malta, and revenue for action outside of the EU).

1   Quash is granted.

2   **IV.      CONCLUSION**

3         For the foregoing reasons, the Court GRANTS Respondents' Motion to Quash the

4   subpoenas issued pursuant to King's § 1782 Application for discovery.

5         **IT IS SO ORDERED.**

6   Dated: August 16, 2016

7

8                                                JOSEPH C. SPERO
                                                 Chief Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California